IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CAROL BRITO,

        Plaintiff,

vs.                                                   No. CIV 03-0138 WDS

JO ANNE B. BARNHART, Commissioner
of the Social Security Administration,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing filed on June 27, 2003. Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security, who determined that Plaintiff was not eligible for disability insurance benefits or supplemental security income. The Court, having considered Plaintiff's Motion [docket # 14] and Memorandum Brief [docket # 15], Defendant's Response [docket # 16], the administrative record and applicable law, finds that Plaintiff's Motion should be **GRANTED IN PART,** and that this matter should be remanded to the Commissioner for further proceedings in accordance with this Memorandum Opinion and Order.

### I. Background

Plaintiff, who was born on November 19, 1946, was employed as a cashier at a grocery store before the onset of her alleged disability. Tr. 20, 50. Plaintiff had complained of knee pain for some time, and was diagnosed with a right medial meniscus tear in early 2001. Tr. 99. On March 9, 2001, Plaintiff underwent arthroscopic surgery to repair her torn meniscus. Tr. 100-01. However, Plaintiff continued to complain of pain after surgery, and X-rays taken in 2002 indicate that Plaintiff has moderate osteoarthritis. Tr. 121.

Plaintiff filed her initial applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act on June 21, 2001. Tr. 50-52, 131-33. Plaintiff alleged that she became unable to work as a result of her disabling conditions on November 27, 2000. Tr. 50, 131. After Plaintiff's applications were denied at the initial level, Tr. 33, and at the reconsideration level, Tr. 42, 136-39, Plaintiff appealed by filing a request for hearing by an administrative law judge ("ALJ") on November 27, 2001, Tr. 46-47.

The hearing before the ALJ was held on April 23, 2002, at which Plaintiff appeared and was represented by an attorney. Tr. 16-30. Plaintiff alleged that she was disabled as a result of numbness in her right arm, and lower back, leg and knee problems. Tr. 24-25. In a decision dated July 23, 2002, the ALJ denied Plaintiff's claims for DIB and SSI. Tr. 9-13. Plaintiff then filed a request for review with the Appeals Council. The Appeals Council denied Plaintiff's request for review on January 3, 2003, Tr. 4-5, and thereby rendered the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). *See* 20 C.F.R. §§ 404.981, 416.1481

On January 29, 2003, Plaintiff filed this action for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). After consent by the parties, this case was reassigned to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) on April 21, 2003 [docket # 12].

## II. Standard of Review

This Court may only review the Commissioner's decision to determine whether it is supported by substantial evidence and whether correct legal standards were applied. *Andrade v. Secretary of Health & Human Servs.,* 985 F.2d 1045, 1047 (10th Cir. 1993). In determining whether the Commissioner's findings are supported by substantial evidence, the Court should not re-weigh the

evidence, nor should it substitute its judgment for that of the Commissioner. *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir. 1994). Instead, the Court should meticulously examine the record to determine whether the Commissioner's decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1993). The "substantial evidence" standard is satisfied by more than a scintilla, but less than a preponderance, of evidence. *Id.* However, evidence is not substantial if it is overwhelmed by other evidence or if it constitutes a mere conclusion. *Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir. 1989).

A sequential five-step analysis applies in determining whether an adult claimant is disabled and entitled to benefits under the Social Security Act. *See Williams,* 844 F.2d at 750-52; 20 C.F.R. §§ 404.1520, 416.920. First, the question is whether the claimant is engaged in substantial gainful activity. *Williams,* 844 F.2d at 750. If so, the claimant is not disabled; if not, the analysis proceeds to step two. *Id.* At the second step, the question is whether the claimant has an impairment or combination of impairments that is severe. *Id.* If not, the claimant is not disabled; however, if the claimant makes the required showing of severity, the analysis proceeds to step three. *Id.* at 750-51. At step three, the question is whether the claimant has an impairment or combination of impairments that meets or equals an impairment listed at Appendix 1, Subpart P, of 20 C.F.R. Part 404 ("Listings" or "Listed Impairment"). *Id.* at 751. If so, the impairment is considered to be presumptively disabling. *Id.* If not, the analysis proceeds to step four, where the question is whether the impairment prevents the claimant from doing past work. *Id.* The claimant is not disabled if he or she can perform past work. *Id.* If the claimant cannot perform past work, the analysis proceeds to step five, where the burden shifts to the Commissioner to establish that the claimant has the residual functional

capacity ("RFC") "to perform other work in the national economy in view of his age, education and work experience." *Id.* (quoting *Bowen v. Yuckert,* 482 U.S. 137, 142 (1987)). The claimant is entitled to benefits unless the Commissioner establishes that the claimant can "perform an alternative work activity and that this specific type of job exists in the national economy." *Id.* (quoting *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984)).

### III. Summary of the ALJ's Decision

At step one of the sequential five-step analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. Tr. 12. The ALJ found at step two that Plaintiff has severe impairments of status post arthroscopic surgery on the right knee for a medial meniscus tear and moderate osteoarthritis in both knees, but concluded at step three that these impairments are not severe enough to meet any Listed Impairment. Tr. 11. At step four, the ALJ concluded that Plaintiff retains the RFC to lift ten pounds frequently and twenty pounds occasionally, to stand and walk for up to six hours in an eight-hour day with normal breaks, and to sit for six hours in an eight-hour day. Tr. 11-13. Given this RFC finding, the ALJ concluded that Plaintiff was able to perform her past relevant work as a cashier. Plaintiff contends that the ALJ erred at step four.

### IV. Discussion

#### 1. Whether the ALJ Erred When He Assessed Plaintiff's RFC

Plaintiff's first contention is that the ALJ's conclusion that she retains the RFC to perform light work is not supported by substantial evidence. Testimony and documents in the record that are relevant to the issue may be summarized as follows. At the hearing before the ALJ, Plaintiff testified that she had worked as a cashier at Furr's Supermarket for approximately twenty years. Tr. 22. She stated that she took a leave of absence from her job from November 2000 through July 2001 because

4

she was having problems with her knees. *See id.* Plaintiff underwent arthroscopic surgery on March 9, 2001 to repair a tear in the medial meniscus of her right leg. Tr. 100-01. At the time of the surgery, Plaintiff's doctor also treated a Grade IV arthritic area on the medial femoral condyle. Tr. 100. A few months after her surgery, in July 2001, Plaintiff learned that Furr's was filing for bankruptcy. Tr. 23. Because Plaintiff believed that she was in danger of losing benefits accrued during her twenty years of employment, she went back to work on a part-time basis from July 1, 2001 to August 31, 2001. Tr. 22-23, 76. Plaintiff indicated, however, that the first five weeks of her return to work were paid vacation, and she actually worked only three weeks. *Id.* Additionally, although a note written by Plaintiff's treating physician dated July 1, 2001 states that Plaintiff was "released to work 4 hours per day until further notice," Tr. 112, Plaintiff testified that her physician did not want to release her to go back to work at that time because he felt that her knee needed more time to heal, Tr. 22-23. Plaintiff worked approximately four to six hours every other day for three weeks, and then the Furr's store where Plaintiff worked closed. Tr. 23.

The ALJ determined that Plaintiff retains the RFC to lift ten pounds frequently and twenty pounds occasionally, to stand and walk for up to six hours in an eight-hour day with normal breaks, and to sit for six hours in an eight-hour day. Tr. 11-13. As support for his RFC determination, the ALJ cited the fact that Plaintiff "was released to working July 2001 and returned to work until her place of employment closed in August 2001." Tr. 12 (citing Tr. 112). The ALJ also cited the fact that "[t]he state agency doctors, after reviewing the medical record, concluded that the claimant retained the ability to perform light work on a sustained basis for all continuous 12 month periods after her alleged onset date." *Id.* (citing Tr. 104-11, 117-18). Plaintiff contends that the ALJ erred when he relied upon the fact that Plaintiff had collected unemployment benefits, and was holding

5

herself out as able to work, as support for his RFC finding. Plaintiff also contends that the ALJ erred when he relied on a note by her treating physician that released her to return to work for four hours per day. Additionally, Plaintiff contends that there is nothing in the record, other than forms completed by nonexamining agency doctors, that supports the ALJ's RFC assessment, and that the forms completed by the nonexamining doctors do not comprise substantial evidence.

Contrary to Plaintiff's first contention, I do not think the ALJ relied upon the fact that she collected unemployment benefits, or held herself out as able to work, to support his RFC finding. Instead, the ALJ appears to have relied upon these facts as support for his determination that Plaintiff's complaints of pain were not credible, Tr. 11, and as support for his finding that Plaintiff can return to her past relevant work as a cashier, Tr. 12. Since I find that the ALJ did not rely upon these facts to support his RFC determination, I will not address Plaintiff's first argument here.

Plaintiff's second contention is that the ALJ erred in relying upon a doctor's note that released Plaintiff to return to work, and the fact that Plaintiff returned to work, as support for his RFC determination. Plaintiff contends that in order to find that a claimant has the RFC to perform a certain type of work, the claimant must be able to work full-time. Because the note only released Plaintiff to work "4 hours per day until further notice," Tr. 112, and because Plaintiff worked only part-time, Plaintiff contends that the ALJ could not rely upon the note or the fact that Plaintiff worked. As support for this argument, Plaintiff cites a Ruling promulgated by the Commissioner of Social Security that defines RFC as follows:

> RFC is what an individual can still do despite his or her limitations. . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work

6

schedule. [FN2].

SSR 96-8p, at 2. However, the footnote referenced at the end of the last sentence quoted above states the following:

> The ability to work 8 hours a day for 5 days a week is not always required when evaluating an individual's ability to do past relevant work at step 4 of the sequential evaluation process. Part-time work that was substantial gainful activity, performed within the past 15 years, and lasted long enough for the person to learn to do it constitutes past relevant work, and an individual who retains the RFC to perform such work must be found not disabled.

SSR 96-8p, at n.2. Thus, when read in its entirety, the Social Security Ruling cited by Plaintiff does not support the contention that a claimant must be able to work full-time. Likewise, the cases cited by Plaintiff do not hold that a claimant must be able to work full-time before an ALJ may rule that the claimant has the RFC to perform a certain type of work.[1]

Despite the foregoing, I find an internal inconsistency in the ALJ's decision. The ALJ characterized Plaintiff's return to work from July 1, 2001 to August 31, 2001 as "an unsuccessful work attempt." Tr. 10. If this was an unsuccessful work attempt, I do not see how the ALJ could rely upon the fact that Plaintiff was released to work in July 2001, and did work, as support for a finding that Plaintiff retains the RFC to perform light work. *See* 20 C.F.R. §§ 404.1574(c), 416.974(c) (unsuccessful work attempts ordinarily do not show that a claimant can do substantial gainful activity). The fact that Plaintiff's work attempt was unsuccessful would seem to indicate that

---

[1] In *Payton v. Shalala,* 25 F.3d 684, 687 (8th Cir. 1996), the Eighth Circuit stated that "[i]n order to find that a claimant has the residual functional capacity to perform a certain type of work, the claimant must have the ability to perform the requisite acts day in and day out, in the sometimes competitive and stressful conditions in which people work in the real world." In *Byron v. Heckler,* 742 F.2d 1232, 1235 (10th Cir. 1984), the Court noted that "[i]n order to engage in gainful activity, a person must be capable of performing on a regular basis." However, neither case requires that a claimant be able to work full-time.

7

she cannot work. Further, as I have noted above, during the period from July 1, 2001 to August 31, 2001, Plaintiff took the first five weeks as vacation, and worked approximately four to six hours every other day for only three weeks. Tr. 23, 76. In these circumstances, I do not think it is reasonable to conclude that Plaintiff's part-time work, for a three week period, which the ALJ characterized as "an unsuccessful work attempt," supports a finding that Plaintiff can perform light level work. I therefore agree with Plaintiff that the ALJ should not have relied upon the fact that Plaintiff was released to work, and did work, as support for his RFC determination.

Plaintiff also contends that the only evidence that supports the ALJ's RFC assessment consists of two documents completed by nonexamining state agency doctors, and those documents do not constitute substantial evidence supporting the ALJ's determination. I agree that the only evidence that supports the ALJ's RFC assessment consists of the following. First, the ALJ cited a Physical Residual Capacity Assessment ("PRFC") form completed by Dr. M. Yoder in March of 2002. Tr. 104-11. Second, the ALJ cited a document entitled "CAASE DEVELOPMENT SHEET." Tr. 117-18. Neither of the reviewers who completed these documents treated or examined Plaintiff, but instead simply reviewed records by Plaintiff's treatment providers and expressed opinions about Plaintiff's functional limitations.

It is well-established in the Tenth Circuit that "findings of a nontreating physician based upon limited contact and examination are of suspect reliability." *Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987). Furthermore, "check-mark style" evaluation forms like the PRFC completed by Dr. Yoder, "standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence." *Id.* In light of the foregoing standards, I agree with the Eighth Circuit Court of Appeals' decision in *Nevland v. Apfel,* 204 F.3d 853 (8th Cir. 2000). In the *Nevland* case, the

8

Court ruled that an ALJ could not rely solely upon the opinions of doctors who had not treated or examined the claimant in assessing the claimant's RFC. *Id.* at 858. The Eight Circuit's standards for evidence are similar to those in the Tenth Circuit, for the Court noted that "opinions of doctors who have not examined the claimant ordinarily do not constitute substantial evidence on the record as a whole." *Id.* Accordingly, I agree with that Court that where there is no medical evidence in the record addressing the functional limitations that result from a claimant's impairments, the ALJ should not rely solely upon forms generated by nontreating, nonexamining agency physicians. Instead, the ALJ should either seek opinions from the claimant's treating physicians, or order consultative examinations, to properly assess the claimant's RFC. *Id.*

In this case, the opinions of nontreating, nonexamining physicians who completed the PRFC and "CAASE DEVELOPMENT SHEET" do not comprise substantial evidence. I therefore find that the ALJ should either have requested information from Plaintiff's treating physician about the functional limitations that result from her impairments, or ordered a consultative examination.

### 2. Whether the ALJ Erred When He Assessed Plaintiff's Credibility

Plaintiff also contends that the ALJ erred when he found that her complaints of pain were not credible. A two-part inquiry applies in assessing functional limitations that result from pain. First, the ALJ need not even consider the claimant's subjective pain testimony unless the claimant proves by objective medical evidence that he or she has an impairment that could reasonably be expected to produce pain. *Thompson v. Sullivan,* 987 F.2d 1482, 1488 (10th Cir. 1993) (citing *Luna v. Bowen,* 834 F.2d 161, 163 (10th Cir. 1987)). Second, where a claimant has established by objective medical evidence that she has an impairment that could reasonably be expected to produce pain, the ALJ must consider all of the evidence to decide whether he believes the claimant's allegations about the

9

functional limitations that result from the pain. *See* 20 C.F.R. §§ 404.1529, 416.929; *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995).

Plaintiff first contends that the ALJ erred when he concluded that Plaintiff failed to establish a medically determinable impairment which could reasonably be expected to cause some of her complaints. Tr. 11. Plaintiff asserts that this finding was incorrect because she suffers from osteoarthritis, which is a pain-producing impairment. However, in making this argument Plaintiff mischaracterizes the ALJ's finding. At the hearing before the ALJ, Plaintiff testified that in addition to her knee problems, she is also disabled as a result of back problems, right arm numbness and right leg numbness. Tr. 24-25. In addressing *these* complaints, the ALJ wrote that "[t]he claimant testified that she had back problems, right arm numbness and right leg numbness, but has failed to establish a medically determinable impairment which could be reasonably expected to cause these complaints." Tr. 11. The record indicates that Plaintiff has osteoarthritis that causes knee pain, Tr. 121, and complaints related to her knee impairments will be addressed below. However, when the ALJ noted the absence of a medically determinable impairment that could reasonably be expected to cause Plaintiff's pain, he was obviously referring to Plaintiff's failure to establish the existence of an impairment that caused her back problems, and arm and leg numbness. I agree with the ALJ that there is no evidence in the record of such an impairment. Thus, Plaintiff's first argument lacks merit.

Plaintiff's second contention is that the ALJ erred when he discounted her claims of throbbing pain in the knees, locking up of the knees, pain that wakes her at night, pain that requires her to shift constantly, and pain that requires her to elevate her legs up to ten times during the day. Although it is not entirely clear, the ALJ appears to have discounted these claims for the following reasons. First, the ALJ noted that Plaintiff returned to work on a part-time basis after her surgery. Tr. 11. Second,

Plaintiff received unemployment after the store where she worked closed, and held herself out as able to work. *Id.* Third, nothing in the medical record indicates that Plaintiff was required to elevate her legs, or indicates that this was recommended. *Id.* Fourth, although Plaintiff testified that she is limited in her ability to perform housework and must perform tasks intermittently, she is able to vacuum, perform yard work and do her laundry. *Id.* And fifth, although Plaintiff takes medication for pain, she does not complain of side effects. *Id.* After making these observations, the ALJ concluded, "[a]fter considering the record as a whole, I substantially discount [Plaintiff's] complaints of disabling pain." *Id.* For the following reasons, I find that the ALJ's credibility analysis was insufficient.

In deciding whether he believed Plaintiff's complaints of knee pain, the ALJ should have considered factors such as the following:

> [T]he levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995). I find that the ALJ gave insufficient consideration to these factors. For example, while the ALJ noted that Plaintiff took pain medication and did not complain of side effects, he did not address how much medication she took or how effective the medication might have been at controlling her pain. Indeed, the only one of the factors that the ALJ addressed was the nature of Plaintiff's daily activities.

Additionally, I find that some of the reasons the ALJ articulated do not provide a sufficient basis for his credibility determination. As I have previously noted, the ALJ concluded that Plaintiff's

return to work for a three week period in July and August 2001 "was an unsuccessful work attempt." Tr. 10. I do not think it is reasonable or logical to conclude that Plaintiff's unsuccessful work attempt detracts from the credibility of her pain testimony. The ALJ also cited the fact that nothing in the medical record indicates that anyone recommended or required that Plaintiff elevate her leg. However, the absence of evidence is not evidence, *Thompson v. Sullivan,* 987 F.2d 1482, 1491 (10th Cir. 1993), and rather than simply discounting the Plaintiff's subjective pain testimony, the ALJ should have considered Plaintiff's subjective pain testimony alongside the medical evidence, *Huston v. Bowen,* 838 F.2d 1125, 1131 (10th Cir. 1988). Plaintiff also contends that the ALJ could not rely upon the fact that Plaintiff received unemployment benefits, and held herself out as able to work, in discounting her credibility. However, Plaintiff does not cite any authority controlling in this Circuit, and also points out that there is a conflict in the authorities. In the absence of controlling guidance, I find that the ALJ was entitled to consider evidence that Plaintiff received unemployment benefits, and held herself out as being able to work, along with all of the other evidence.

## V. Conclusion and Summary

In sum, I find that the ALJ's determination that Plaintiff retains the residual functional capacity to lift ten pounds frequently and twenty pounds occasionally, to stand and walk for up to six hours in an eight-hour day with normal breaks, and to sit for six hours in an eight-hour day is not supported by substantial evidence. I further find that the ALJ's credibility assessment is legally insufficient.

Accordingly, this matter shall be remanded to the Commissioner of Social Security to conduct further proceedings, which shall include:

1) The Commissioner should either request further information from Plaintiff's treating physician, or obtain a consultative examination, to establish the functional limitations that result from

12

Plaintiff's impairments.

2) The Commissioner should also re-assess the credibility of Plaintiff's pain testimony. In doing so, the Commissioner should consider the factors set forth in the body of this opinion, in accordance with *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995).

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing [docket # 14] is **GRANTED IN PART,** and this matter shall be remanded to the Commissioner of Social Security for further proceedings in accordance with this Memorandum Opinion and Order.

_____
**W. DANIEL SCHNEIDER**
**UNITED STATES MAGISTRATE JUDGE**